Manuel Tous Soto, demandante y apelado, *v.* Municipio de Isabela, demandado y apelante.

No. 4436.—*Sometido:* Diciembre 19, 1928. *Resuelto:* Diciembre 12, 1929.

*O'Neill & O'Neill,* abogados del apelante; *M. Tous Soto,* abogado del apelado.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

El demandante consiguió sentencia contra el municipio demandado por $5,000 como valor razonable de ciertos servicios profesionales. El municipio apela y dice que la corte de distrito erró al llegar a la conclusión de que el demandado solicitó y obtuvo los servicios de que se trata, y al resolver que entre las partes hubo un contrato de locación de servicios profesionales.

En la opinión radicada por el juez de distrito éste indica que al tiempo de una entrevista que celebraron el demandante y el alcalde del municipio nada se dijo acerca del valor de los honorarios ni respecto a quién los pagaría. El apelante pretende que de este aserto deduzcamos que no medió una conjunción de voluntades, y, por ende, que no hubo contrato. También se hace algún hincapié en otro contrato habido previamente entre el municipio y Alejandro Laborde Quintero con respecto a las diligencias tendientes a obtener un préstamo para el municipio, por virtud del cual Laborde se comprometió a suministrar los servicios de un abogado

en caso de litigio. Aquí el apelante arguye que Laborde, y no el municipio, es responsable de los servicios prestados.

El demandante nada tuvo que ver con el contrato entre el municipio y Laborde, y nada supo de él hasta después que se había dictado sentencia en la acción en que se rindieron los servicios de que ahora se trata, y después de haberse aprobado un memorándum de costas y honorarios de abogado en el mismo. El demandante vió por primera vez copia del contrato en poder de Laborde, cuando éste entabló acción relativa al mismo en contra del municipio.

Laborde le presentó al demandante el alcalde, y desapareció. No se ha demostrado que tuviera alguna otra conexión con el litigio que dió lugar a la presente controversia. La primera entrevista del demandante fué con el alcalde, que entonces, y desde aquel momento, representó al municipio en todas sus relaciones con el demandante, y quien suministró todos los datos e información necesarios para la defensa que fué conducida a feliz término por el demandante. Estos y otros hechos bosquejados por el juez sentenciador plenamente justifican las dos primeras conclusiones que ahora se señalan como error.

La corte inferior también resolvió que el contrato con Laborde no incluía la obligación de proporcionar un abogado en un procedimiento de la clase a que pertenecían los servicios prestados en este caso y cuyo valor se trata de recobrar aquí. No se señala como error esta conclusión.

La tercera contención del apelante es que los servicios de que se trata no valían razonablemente $5,000. En el pleito en que se rindieron estos servicios, la Corte de Distrito de Aguadilla aprobó un memorándum de costas y honorarios de abogado que incluía una partida de $5,000 como honorarios de abogado. Aparte de cualquier cuestión de *res judicata* o *estoppel,* la acción de la Corte de Distrito de Aguadilla al conceder esta partida tenía derecho a que se le acreditara algún valor. En el caso de autos hubo prueba testifical en torno a la naturaleza de las cuestiones envueltas en la deci-

sión anterior y al carácter y cantidad del trabajo realizado por el abogado, aquí demandante.

Como abogado del municipio, el aquí demandante no sólo derrotó la acción anterior en la Corte de Distrito de Aguadilla, si que también obtuvo la confirmación de esa sentencia en apelación. El presente pleito fué entablado con el fin de cobrar el valor razonable de los servicios rendidos en aquella apelación, así como en la corte inferior. El valor del trabajo realizado en aquella apelación no podía ser incluído en el memorándum de costas aprobado por la Corte de Distrito de Aguadilla, ni concedido por esa corte. Esta circunstancia, así como las declaraciones a que se refiere el párrafo anterior, parece haber sido pasada por alto por la corte de distrito en el presente caso. Empero, el juez sentenciador sí tomó en consideración el hecho de que los $5,000 concedidos por la Corte de Distrito de Aguadilla necesariamente no representaban el valor total de los servicios que en realidad se prestaron en la corte de distrito. Según se indica en la relación del caso y opinión, el valor razonable de tales servicios constituía un máximo.

La concesión que en efecto se hizo pudo haber representado un cálculo conservador de tal valor, o cualquier parte del mismo, de acuerdo con circunstancias que no están relacionadas en forma alguna con la cuestión del valor.

Bajo el número quinto en la demanda en este caso, se alegó que en procedimiento para aprobación de memorándum de costas, el ahora demandante, por y en beneficio del municipio de Isabela, había presentado a la Corte de Distrito de Aguadilla un memorándum en el que figura la cantidad de $5,000 para honorarios de abogado, y al que dió su aprobación la dicha corte por resolución de julio 18, 1926, que es firme y ejecutoria; y tal alegación fué admitida por la parte demandada en este caso. Aparte de la situación en que se coloca la demandada, o sea, el municipio de Isabela, por tal admisión y por sus propios actos, no encontramos que la Corte de Distrito de San Juan, al juzgar del presente caso, y

teniendo en cuenta esa resolución firme, haya procedido con error fijando la cantidad para honorarios de abogado en la misma forma que fué fijada por la dicha resolución, con la anuencia del municipio de Isabela. No creemos que en estas condiciones pueda establecerse modificación alguna en tal cuantía, dados los términos de la presente apelación.

No hallamos abuso de discreción respecto a la cantidad fijada en la sentencia recurrida, la que debe confirmarse.

Los Jueces Presidente Señor del Toro y Asociado Señor Hutchison disintieron.

#### OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SEÑOR DEL TORO

Manuel Tous Soto, un abogado en ejercicio ante los tribunales de esta Isla, demandó al municipio de Isabela en reclamación de cinco mil dólares, sus intereses legales y las costas del litigio. Contestó el demandado. Fué el pleito a juicio, y la corte de distrito finalmente dictó sentencia condenando al demandado a pagar al demandante los cinco mil dólares reclamados.

No conforme el municipio de Isabela interpuso el presente recurso de apelación señalando tres errores, así:

"PRIMERO: La Corte erró al declarar probado el hecho cuarto de la demanda, o sea, que el Municipio de Isabela, solicitó y obtuvo los servicios del abogado demandante.

"SEGUNDO: La Corte cometió error al declarar que hubo locación de servicios entre el Municipio de Isabela y Don Manuel Tous Soto.

"TERCERO: La Corte cometió error al declarar que aún habiendo locación de servicios, haya el demandante probado el inciso sexto de su demanda, o sea, que la cantidad de CINCO MIL DÓLARES constituye una equitativa, justa y razonable compensación de sus servicios en el caso."

En la demanda se alega lo que sigue:

"TERCERO:—Ante la Corte de Distrito de Aguadilla del Distrito Judicial de Aguadilla, se promovió a fines del año 1924, por John Nuveen Company, el caso número cinco mil treinta y seis del registro de causas civiles de la Secretaría de dicho tribunal, en el cual

se hicieron partes demandadas a la Junta de Subasta del Municipio de Isabela y a la Asamblea Municipl del mismo, y se solicitó se declarara nula y sin validez ni efectos legales la venta en pública subasta realizada, el 25 de septiembre de 1924, por la Junta del Municipio de Isabela y ratificada y aprobada, unos días después, por la Asamblea Municipal de Isabela, de cuya venta en pública subasta fueron objeto los bonos emitidos en primero de enero del mismo año por el Municipio de Isabela al objeto de obtener un empréstito de CIEN MIL ($100,000) dollars, que había sido aprobado por la Asamblea Municipal y ratificado por el Consejo Ejecutivo de Puerto Rico.

"CUARTO:—En dicho pleito, las entidades demandadas del Municipio de Isabela, representadas por sus respectivos presidentes y el alcalde del Municipio de Isabela, señor Ramón Banuchi, solicitaron y obtuvieron los servicios del abogado demandante, quien estudió el caso, contestó la demanda e intervino en todos los procedimientos ante la Corte de Distrito de Aguadilla, cuyo tribunal dictó sentencia desestimando la demanda y habiendo apelado la demandante para ante el Tribunal Supremo de Puerto Rico, continuó dicho abogado representando a los demandados, hasta recaer en 20 de mayo de 1925, resolución final que convirtió en firme y ejecutiva aquella sentencia.

"QUINTO:—Ante la Corte de Distrito registró entonces el abogado Manuel Tous Soto en representación de los demandados y para beneficio de éstos, un memorándum de costas y desembolsos que fué impugnado por John Nuveen Company, discutido y sometido a resolución del Tribunal, quien en orden de 18 de julio del 1926, que tiene el carácter de firme y ejecutiva, fijó en CINCO MIL VEINTE ($5,020.00) dollars las costas y desembolsos a pagar por la demandante, quien era y es una entidad jurídica del estado de Illinois, con residencia en Chicago, dedicada al negocio de banca y solvente.

"SEXTO:—Con motivo de los actos anteriormente relacionados y su intervención en el litigio, el demandante tuvo que dedicar gran período de tiempo al estudio de las cuestiones legales envueltas en el litigio, así como de los documentos relacionados con la subasta impugnada de nulidad, realizar viajes al pueblo de Isabela y a la ciudad de Aguadilla y comparecer varias veces ante la Corte de Distrito de Aguadilla y Tribunal Supremo de Puerto Rico, devengando de esta manera honorarios profesionales que ha tasado en cantidad de CINCO MIL ($5,000) dollars, la cual constituye equitativa, justa y razonable compensación de sus servicios y ha reclamado del Muni-

cipio de Isabela, sin que éste haya hecho efectivo su montante ni parte del mismo.''

En su contestación el demandado aceptó el hecho tercero de la demanda anteriormente transcrito, negó el hecho cuarto ''por no haber contratado dicho municipio, los servicios del abogado demandante, en el presente caso, sino que solamente los aceptó.'' El hecho quinto fué aceptado y negado el sexto.

Como materia nueva constitutiva de oposición a la demanda, alegó el demandado lo que sigue:

''PRIMERO:—El Municipio de Isabela a los efectos de contratación del empréstito objeto del pleito de John Nuveen Company a que se refiere el párrafo tercero de la demanda, celebró con Alejandro Laborde Quintero, el contrato siguiente:

'' 'CONTRATO: COMPARECEN el Municipio de Isabela, Puerto Rico, representado por su Comisionado Municipal de Servicio Público, Policía y Prisiones, Don Rámón Banuchi, de una parte, y DON ALEJANDRO LABORDE, por su propio derecho de la otra parte, y hacen constar que han hecho el siguiente contrato:

'' 'PRIMERO:—El expresado Sr. Alejandro Laborde, por el presente se obliga a encargarse de la tramitación de cierto empréstito por la suma de CIEN MIL DOLLARS ($100,000) autorizado por la Asamblea Municipal de dicho Municipio, por medio de ordenanza de fecha 11 de febrero de 1924, hasta dejar terminada la tramitación del mencionado empréstito y al Municipio en poder de los fondos del mismo. El Sr. Laborde, como parte de la tramitación de dicho empréstito se obliga a suministrar al dicho municipio los siguientes servicios y cosas que se puedan originar en la tramitación de dicho empréstito.

'' 'Traducciones.

'' 'Publicaciones en Puerto Rico.

'' 'Publicaciones en New York.

'' 'Servicios de los abogados que aprueban la legalidad de los bonos en New York.

'' 'Servicios de los abogados en caso de impugnación del empréstito en P. R.

'' 'Bonos impresos.

'' 'Seguro, cobro y cambio de los bonos.

'' 'Cables y gastos de transportación y mantenimiento de las autoridades Municipales y cualquier otro servicio o cosa que se relacione con dicho empréstito.

"Segundo:—Como compensación de los servicios y costas arriba mencionados que el Sr. Laborde se obliga a suministrar, el Municipio de Isabela, Puerto Rico, por el presente se obliga a pagar a dicho Sr. Laborde, la suma de cinco mil dollars ($5,000.00).

" 'El pago de dicha compensación al Sr. Laborde se hará por el Comisionado Municipal de Servicio Público, Policía y Prisiones de dicho Municipio, o por cualquier otro funcionario Municipal que corresponda. una vez terminado el empréstito y estando el Municipio en poder de los fondos producto del mismo.

" 'En testimonio de lo cual, suscribimos . . . '

"Segundo:—Dicho contrato era conocido por el demandante en la fecha en que prestó sus servicios al demandado Municipio de Isabela.''

Trabada así la contienda fué el pleito a juicio. Toda la evidencia introducida consistió en la declaración del demandante y en la deposición de Alejandro Laborde, por parte del demandante, limitándose la parte demandada a hacer declarar de nuevo al demandante.

Conocemos el contrato celebrado entre el municipio de Isabela y Laborde por virtud del cual Laborde, mediante el pago de cinco mil dólares, se obligó a encargarse de la tramitación de cierto empréstito de cien mil hasta dejar terminada la tramitación y al municipio en poder de los fondos, obligándose además a proporcionar los servicios de abogado en caso de impugnación del empréstito en Puerto Rico.

Declarando como su propio testigo el demandante se expresó, en parte, así:

"Conocí a don Ramón Banuchi hacia fines del año 1924; entonces él era ya alcalde municipal de Isabela. Me fué presentado en el edificio de El Mundo por don Alejandro Laborde Quintero, quien en presencia del señor Banuchi me manifestó que la casa John Nuveen Company, de Chicago, representada por el abogado María Figueroa del Rosario había interpuesto ante la Corte de Distrito de Aguadilla un Certiorari contra la Junta de Subasta de Isabela y la Asamblea Municipal de Isabela a fin de que se revisara por la Corte de Aguadilla los procedimientos de la subasta de los bonos del empréstito municipal de Isabela por un valor de cien mil pesos, que había sido admitido de acuerdo con una ordenanza debidamente aprobada por la

Asamblea Municipal y Consejo Ejecutivo de Puerto Rico. Entonces se retiró el señor Alejandro Laborde y quedamos en conferencia don Ramón Banuchi y el que declara. El señor Banuchi me presentó la petición de Certiorari y la notificación de la misma. La leí y entendí que necesitaba estudiar todos los procedimientos y le indiqué que necesitaba esos documentos, y que al efecto me trasladaría a Isabela para estudiarlos. No hablamos nada absolutamente respecto a honorarios. Me dejó encargado del asunto y pocos días después me traladé desde San Juan a Isabela. Se me presentó por el señor Banuchi y los empleados a sus órdenes en el Municipio, toda la documentación original. Entonces estudié algunos en sus originales, de otros solicité copia y procedí a estudiar si realmente la oferta hecha en el acto de la subasta, por la casa Silverman Company, de Chicago, a quien se le había adjudicado la buena pro de los bonos, era preferente de acuerdo con el interés del Municipio, a la proposición hecha por John Nuveen Co., a quien se le había negado la buena pro, y presentaba el Certiorari bajo la cuestión de que era más conveniente su ofrecimiento al Municipio de Isabela que la formulada por la casa Silverman. Regresé a San Juan y continué el asunto. Para contestar el *Certiorari* y preparar mi argumentación me fué necesario estudiar toda la ley Municipal, con la ley especial relativa a empréstitos municipales; todo el expediente de tramitación del empréstito municipal, y entonces formulé mi contestación. Me trasladé a Aguadilla, no recuerdo bien por qué circunstancia hubo que celebrar otra vista; se llegó a un acuerdo respecto a los hechos substanciales del caso; quedó pendiente la resolución de la presentación de alegatos por una y otra parte; formulé ese alegato; después a requerimiento del juez de la Corte de Distrito de Aguadilla, señor Bryan, tuve una conferencia con él respecto a las cuestiones legales del asunto; se falló el asunto a favor del Municipio de Isabela; apeló la casa Silverman; continué la tramitación ante el Tribunal Supremo de Puerto Rico; obtuve también resolución favorable del Tribunal Supremo de Puerto Rico, y entonces, readquirida nuevamente la jurisdicción por la Corte de Distrito de Aguadilla, formulé a nombre del alcalde un memorándum de costas, incluyendo los gastos habidos en el procedimiento, incluyendo los honorarios de abogado. Se discutió el memorándum, y últimamente la Corte de Distrito de Aguadilla, aprobó el memorándum, fijando los gastos habidos por el Municipio y fijando en cinco mil dollars la cuantía de los honorarios del abogado del Municipio. Posteriormente indiqué la conveniencia de cobrar ese memorándum de costas; no se ha podido hacer efectivo

debido a que la Asamblea Municipal de Isabela, si el alcalde hace cualquier proposición por conveniente que sea para los intereses del Municipio, contesta que no, a la solicitud que le hace el alcalde. Basta que el alcalde encargue a un abogado para representar un asunto del Municipio, para que la Asamblea Municipal no lo apruebe.

"  *     *     *     *     *     *     *

    *     *     *     *     *     *     *

"Dmdo.—P.—Dice que no se habló nada de honorarios?—R.—No, señor.—P.—Desearía que explicara exactamente el alcance de esas palabras?—R.—Que entre el señor Banuchi y yo no se cruzó frase alguna respecto de los honorarios que yo devengaría, de modo, que aceptaba yo un asunto, como se aceptan la mayor parte de los asuntos, que el abogado se hace cargo de la tramitación, y con el cliente lo único que conviene es yo llevaré el asunto, lo estudiaré y cumpliré con él.—P.—No se habló nada de quién pagaría los honorarios, ni de la cuantía de los honorarios?—R.—Absolutamente. Sobre gratificación o compensación del trabajo no hablamos absolutamente nada."

En su deposición Laborde, en parte, dice:

"Sr. Tous Soto: Intervino usted en alguna manera en ese certiorari? Testigo: Yo no intervine en nada, solamente el Alcalde me pidió el nombre de un abogado que pudiera defenderlo y yo le señalé al citado abogado señor Tous Soto.

    "  *     *     *     *     *     *     *

"Sr. Tous Soto: Sabe usted si el señor Banuchi y el señor Tous Soto se conocían antes de ese acto? Testigo: Yo presenté al señor Banuchi a la oficina del señor Tous Soto, que ocupaba al lado de la mía, en el edificio 'El Mundo.' Sr. Tous Soto: La conferencia entre el señor Banuchi y el señor Tous Soto, ¿fué en presencia de usted o aparte? Testigo: Fué aparte porque aquel día estaba yo muy ocupado y a lo único que me limité fué a presentarlo. Sr. Tous Soto: El señor Banuchi le hizo saber a usted que los servicios del señor Tous Soto eran por cuenta de usted? Testigo: No, no podía hacérmelo comprender puesto que nuestro contrato era claro y terminante. Es, más, él me preguntó cuánto costaría la defensa de esos honorarios y yo le dije que no podía de ninguna manera justipreciar los honorarios puesto que esos casos así luego tenían demasiado trabajo y mucho más éste que fué apelado al Tribunal Supremo también.

" *     *     *     *     *     *     *

"'Sr. Oneill: Decía usted que presentó el Alcalde de Isabela a don Manuel Tous? Testigo: Sí señor. Sr. Oneill: Qué le dijo? Sr. Testigo: Presentarle al Alcalde y decirle al señor Tous Soto que tenían un asunto para el cual necesitaba abogado. Sr. Oneill: Y el señor Banuchi ¿qué le dijo a usted? Testigo: Que se había presentado una demanda a la Junta de Subasta sosteniendo que debía haber dado la buena pro del empréstito al demandante porque su oferta era mejor que la aprobada. Sr. Oneill: Su oferta para qué? Testigo: Su oferta para obtener la buena pro del empréstito. Sr. Oneill: A qué atribuye usted que el Alcalde de Isabela le hiciera esa consulta? Testigo: El Alcalde de Isabela constituía al mismo tiempo el presidente de la Junta de Subasta y era quien tomaba la iniciativa en la ordenanza de ésta. Sr. Oneill: Y usted, quién era? Testigo: Yo era quien tramitaba el empréstito y me pidió mi opinión como perito en cuestión de empréstito preguntándome si había razón para la demanda, si era verdad lo que se decía por Nuveen de ser mejor su oferta y allí hicimos los cálculos y lo demostré que no era así. Sr. Oneill: El Alcalde le dijo a usted que estuviese el testigo en la obligación de defender la impugnación? Testigo: No, de ninguna manera. No podía decirme eso. Sr. Oneill: Está usted seguro? Testigo: Segurísimo.''

A mi juicio el contrato entre el municipio y Laborde es susceptible de ser interpretado en el sentido que alega el municipio. Laborde se comprometió a actuar hasta que el dinero estuviera en poder del municipio, proporcionando los servicios de abogado en caso de impugnación del empréstito. Según su propia declaración, fué Laborde el que demostró al alcalde con los cálculos que hicieron que la proposición de Nuveen no era la mejor, actuando el alcalde, presidente de la junta de subastas, de conformidad, y fué Laborde el que llevó al alcalde al bufete del demandante, poniendo entonces el alcalde en manos del demandante el asunto sin que nada se hablara de honorarios.

Pero hay que reconocer que el contrato admite de igual modo la interpretación restrictiva que le dió la corte de distrito y como el alcalde faltó en declarar en el acto de la vista, no me siento justificado en ir tan lejos como decir que no se

ha demostrado un contrato de prestación de servicios profesionales entre el demandante y el demandado. De ahí que esté conforme con la primera parte de la opinión de la mayoría emitida por el Juez Asociado Sr. Texidor.

En lo que no puedo estar conforme es en que se ordene el pago de cinco mil dólares por los servicios prestados.

El demandante no presentó a la corte de distrito los autos del *certiorari* para que la corte tuviera oportunidad de juzgar de su trabajo. Se limitó a declarar. A él le correspondía la prueba. El hecho sexto de la demanda fué negado.

La corte parece que estimó que no se necesitaba en este caso más prueba que lo ocurrido en la Corte de Distrito de Aguadilla en relación con el memorándum de costas presentado en el recurso de *certiorari*. En su opinión dice:

"¿Qué alcance ha de darse a la tasación hecha por la Corte de Distrito de Aguadilla? Entendemos que es tan concluyente entre el Municipio de Isabela y su abogado como entre dicho Municipio y John Nuveen Company; es final e inatacable. A virtud de ella el Municipio de Isabela le ha sido reconocido un derecho, de un montante fijo, sin que sea susceptible de nueva impugnación por la parte deudora. El Municipio de Isabela no puede enriquecerse con el trabajo de su abogado. La adjudicación de esos CINCO MIL ($5,000.00) dólares por el trabajo de su abogado, implica para el Municipio de Isabela la aceptación de ser ése y no otro el valor razonable de los servicios de su abogado y la consiguiente obligación de pagar éstos."

A mi juicio son erróneas las conclusiones que contiene el párrafo transcrito.

Conocemos por la propia declaración del demandante cómo fué que se presentó el memorándum, y sabemos también por él que las cantidades concedidas no han sido cobradas.

Se habla de que hubo impugnación por parte de John Nuveen Co., pero no se sabe en qué consistió. La Corte de Distrito de San Juan no tuvo a la vista ni siquiera los autos relativos al memorándum. En un caso de tal importancia y en que se da tanta fuerza a la resolución de la Corte de Distrito de Aguadilla, debió conocerse ésta mejor.

Es cierto que esta Corte Suprema ha decidido (*Castro* v. *Societe Anonyme des Sucreries,* 34 D.P.R. 575, 580) que el "valor de los servicios es la norma que debe seguirse para calcular el de los honorarios cuyo pago deba imponerse a la parte vencida," pero antes dijo "que es a la parte victoriosa y no a su abogado a la que se reconoce el derecho de percibir honorarios."

Este es un pleito independiente en el que está obligado el demandante a probar su caso no por lo que decidiera la Corte de Distrito de Aguadilla inducido por él mismo, sino a virtud de lo que realmente valen sus servicios. La Corte de Distrito de San Juan no estaba obligada a someterse al juicio de la de Aguadilla. Pudo y debió actuar por sí misma fijando la suma que estimara razonable como compensación de los servicios prestados.

Despejado este punto y yendo a la prueba, ¿qué demuestra?

Un sencillo caso de *certiorari* en el que según repetidamente se dice por la propia parte demandante no se atacaba la tramitación del empréstito, ni la ordenanza, ni procedimiento alguno, ni había cuestión de ley envuelta reconociéndose como se reconocía la validez de la proposición a la que se le había adjudicado la buena pro, alegándose únicamente que la proposición del peticionario era más ventajosa para los intereses del municipio. Siendo ello así, ¿qué otra cosa había que exponer ante la corte que no fueran las razones que la junta de subasta tuvo para conceder la buena pro?

Bajo los hechos y circunstancias del caso, me parece una enormidad ordenar a un pequeño municipio de esta Isla que pague los *cinco mil dólares* de honorarios que aquí se reclaman.

El argumento de que el municipio no debe enriquecerse con el trabajo de su abogado, carece de fuerza y puede obviarse como se verá en seguida. Hay una gran distancia entre obtener una resolución de una corte mandando pagar a

una corporación de Illinois cinco mil dólares por honorarios de abogado y el recibo de dicha cantidad.

A mi juicio la resolución justa de este caso es la siguiente:

Debe modificarse la sentencia recurrida en el sentido de condenar al municipio demandado a traspasar al demandante todos sus derechos y acciones al cobro de la suma que la Corte de Distrito de Aguadilla ordenó a John Nuveen Co. que pagara por honorarios de abogado devengados en el caso de *certiorari* al municipio de Isabela, o a satisfacer al demandante una suma igual a la líquida que pueda haber recibido el municipio por tal concepto, y si a esto no se aviniere el demandante entonces que el municipio le pague la suma de quinientos dólares que es en la que atendidas las pruebas presentadas puede justipreciarse a mi juicio el valor de su trabajo.